**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

NOV 16 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| RICHARD ROGALINSKI, individually and on behalf of the class,<br><br>    Plaintiff-Appellant,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>    Defendant-Appellee. | No. 22-16327<br><br>D.C. No. 3:22-cv-02482-CRB<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Argued and Submitted October 17, 2023
San Francisco, California

Before: SILER,** NGUYEN, and R. NELSON, Circuit Judges.
Concurrence by Judge R. NELSON.

Richard Rogalinski ("Rogalinski") appeals from the district court's dismissal

under Fed. R. Civ. P. 12(b)(6) of his First Amendment claims against Meta

---

    \*    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

    \*\*    The Honorable Eugene E. Siler, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

Platforms, Inc. ("Meta" or "Facebook"). We have appellate jurisdiction under 28 U.S.C. § 1291. We review de novo the district court's dismissal for failure to state a claim. *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1114 (9th Cir. 2021). We affirm.

Rogalinski's First Amendment allegations, as described in his complaint, stem from Meta's actions in relation to three Facebook posts Rogalinski published in April, May, and June 2021. In the first two posts, Rogalinski questions the utility of masks and vaccines, respectively, to prevent the spread of COVID-19, and in the third shares a tweet promoting the use of hydrochloroquine to treat COVID-19. Meta appended a statement to the first two posts stating "Missing Context. Independent fact-checkers say this information could mislead people. See Why," and hid the third post from public view, labelling it "False Information."

Rogalinski alleges this constitutes state action because of statements then-White House Press Secretary Jennifer Psaki made at a July 15, 2021 press briefing, including "we are in regular touch with these social media platforms," and "[w]e're flagging problematic posts for Facebook that spread disinformation."

"To survive a motion to dismiss, the complaint must contain sufficient 'well-pleaded, nonconclusory factual allegation[s],' accepted as true, to state 'a plausible claim for relief.'" *Beckington v. Am. Airlines, Inc.*, 926 F.3d 595, 604 (9th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679–80 (2009)).

1. Rogalinski attempts to show Meta's "seemingly private behavior may be fairly treated as that of the State itself," *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (9th Cir. 2001) (internal citations omitted), for purposes of the First Amendment under two theories. First, he alleges the nexus test is met because the state "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Am. Mfrs. Mut. Ins. Co., v. Sullivan*, 526 U.S. 40, 52 (1999) (citing *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). Rogalinski relies on Psaki's statements regarding "flagging posts," and the White House's "proposed changes" to Meta, among others, to show coercion under the nexus test.

But Rogalinski's allegations regarding flagging posts and proposing changes, without any threat or even "positive incentives," *O'Handley v. Weber*, 62 F.4th 1145, 1158 (9th Cir. 2023), are not sufficient to support a plausible inference of coercion. *Cf. Carlin Communications, Inc. v. Mountain States Tel. & Tel. Co.*, 827 F.2d 1291, 1295 (9th Cir. 1987) (finding deputy county attorney's threat to prosecute the private entity constituted "coercive power," converting the private entity's responsive conduct into state action under 42 U.S.C. § 1983). And while there are "different versions of the nexus test," *O'Handley*, 62 F.4th at 1157, Rogalinski does not advance theories other than coercion to attempt to meet it.

3

Rogalinski fails to state a claim under the nexus test because his allegations do not support a plausible inference that the government coerced Meta.

2. Second, Rogalinski alleges that Meta's actions constitute state action under the joint action test, which "asks whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012) (cleaned up). Rogalinski relies on Psaki's statements regarding communication between the White House and social media platforms, as well as the government's "flagging" posts, to argue that Meta "acted willfully and voluntarily" with the government to censor statements.

But Rogalinski does not allege facts sufficient for supporting a plausible inference that Meta took any action at all in response to the posts flagged by the government, much less that Meta willfully participated in a censorship action. *See Mathis v. Pac. Gas & Elec. Co.*, 75 F.3d 498, 504 (9th Cir. 1996) (finding "consultation and information sharing" that did not lead to the challenged actions could not support a joint action theory). Therefore, Rogalinski fails to state a claim under the joint action test.

**AFFIRMED.**

*Rogalinski v. Meta Platforms, Inc.*,
No. 22-16327

FILED

NOV 16 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

R. Nelson, Circuit Judge, concurring:

I concur in the disposition to affirm the district court. Plaintiff did not sufficiently allege that the government coerced Meta Platforms, Inc. ("Meta" or "Facebook") to suppress speech. And Plaintiff did not seek leave to amend the complaint. That is enough to resolve this case.

But the gist of the underlying allegations is troubling. They suggest that the White House's coercive actions show hostility to our country's commitment to free expression and the free exchange of ideas. Our sister circuit has found these claims—when sufficiently pleaded—troubling enough to affirm an injunction against federal activities. *See Missouri v. Biden*, 83 F.4th 350 (5th Cir. 2023), *stayed sub nom. Murthy v. Missouri*, No. 23A243, 2023 WL 6935337 (U.S. Oct. 20, 2023). The Fifth Circuit held that the evidence produced in that case showed "a coordinated campaign" of enormous "magnitude orchestrated by federal officials that jeopardized a fundamental aspect of American life." *Id.* at 392. Although the Supreme Court stayed that injunction pending appeal, three justices dissented because "censorship of private speech is antithetical to our democratic form of government." *Murthy*, 2023 WL 6935337, at *1, 4 (Alito, J., dissenting).

Had Plaintiff here alleged sufficient facts consistent with those alleged in *Missouri v. Biden*, the case, in my view, should have been allowed to proceed. But

the differences are material.  The complaint in *Missouri v. Biden* alleged that "numerous federal agencies" engaged in various "meetings and communications" to "pressure" social media companies to "take down" and "suppress" the "free speech of American citizens." 2023 WL 4335270, at *44 (W.D. La. July 4, 2023).  And that complaint detailed extensively how the White House engaged in numerous forms of coercive conduct by repeatedly pressuring Facebook to remove speech it did not like.  *See id* at *45–48.

Such allegations are absent here.  The complaint here focuses on statements made by then-White House Press Secretary Jennifer Psaki, who commented in a press briefing that the White House was "in regular touch with these social media platforms" and "flagging problematic posts for Facebook that spread disinformation."  These more minimal allegations cannot show state action because they include no governmental threats or even positive incentives.  *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999); *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012); *O'Handley v. Weber*, 62 F.4th 1145, 1158 (9th Cir. 2023).  Nor can we grant leave to amend because Plaintiff never asked us to do so. *See Unified Data Services, LLC v. FTC*, 39 F.4th 1200, 1208 (9th Cir. 2022) (declining to remand with leave to amend because plaintiffs did not ask for such relief).  But the pattern of alleged behavior by our country's leadership is nonetheless troubling.

2

Our country's democratic traditions demand a robust marketplace of ideas where we can exchange diverse, contrasting, and even controversial opinions. A coordinated effort between private and government actors to censor ideas, no matter how contentious or offensive those ideas may be, offends the First Amendment. By limiting the ability of the government to silence unpopular ideas, the First Amendment places its trust in society's common wisdom. The people, not the government, bear the responsibility to discern the truth. A free and open marketplace of ideas can create complex challenges of discerning truth, but such complexity does not justify the suppression of speech.